**EX PARTE Calvin Gary WALKER, Appellant**

NO. 09–15–00037–CR, NO. 09–15–00038–CR, NO. 09–15–00039–CR, NO. 09–15–00040–CR, NO. 09–15–00041–CR, NO. 09–15–00042–CR

Court of Appeals of Texas, Beaumont.

Submitted on June 10, 2015

Opinion Delivered March 9, 2016

Discretionary Review Refused June 15, 2016

Dick Deguerin, Matt Hennessy, DeGuerin, Dickson, Hennessy & Ward, Houston, TX, for Appellant.

Bob Wortham, Criminal District Attorney, Wayln G. Thompson, Assistant Criminal District Attorney, Beaumont, TX, for Appellee.

Before McKeithen, C.J., Kreger and Horton, JJ.

## OPINION

CHARLES KREGER, Justice

This is a consolidated, accelerated appeal from the trial court's orders denying habeas corpus relief in six cases. In his sole issue, appellant Calvin Gary Walker contends that the trial court erred by ruling on Walker's pretrial petitions for writ of habeas corpus without conducting an evidentiary hearing and without notifying Walker of its intent to rule without a hearing. We affirm.

## I. Background

On July 29, 2014, a Jefferson County grand jury returned six felony indictments against Walker. In cause numbers 14–19965, 14–19966, 14–19967, and 14–19968, the indictments charge Walker with securing execution of a document by deception. In cause numbers 14–19969 and 14–19970, the indictments charge Walker with money laundering.[1]

On September 23, 2014, Walker filed six pretrial petitions for writs of habeas corpus, seeking dismissal of the charges in all six cases on double jeopardy and due process grounds. In his petitions, Walker alleged that he was previously indicted in federal court on May 4, 2011. The federal indictment, which Walker attached as an exhibit to his habeas petitions, charged Walker with mail fraud, wire fraud, interstate transportation of funds by fraud, fraud upon programs receiving federal funds, and money laundering. The thirty-seven count indictment was based on allegations that Walker had used his electrical contracting business to defraud the Beaumont Independent School District ("BISD"). According to Walker, his federal case was ultimately tried to a jury, but ended in a mistrial in December 2011 after the jury was unable to reach a verdict. Walker alleged that a second federal trial was later scheduled; however, shortly before it was set to begin, the United States Attorney's Office for the Eastern District of Texas ("USAO") reached a plea agreement with Walker. Walker alleged that under the terms of the plea agreement, he agreed to plead guilty to a federal misdemeanor charge of failing to pay a tax due and owing. In exchange, the USAO agreed not to prosecute Walker for any offenses of which it had knowledge. According to Walker, the USAO dismissed all charges contained in the original federal indictment against Walker on December

---

1. The appellate record does not contain copies of the indictments returned against Walker in state court and does not otherwise reflect the allegations set forth in those indictments.

12, 2012, in accordance with the terms of the plea agreement.

Walker alleged that following the resolution of his federal case, John Malcolm Bales, the United States Attorney for the Eastern District of Texas, and other individuals within the USAO and federal law enforcement, were "unhappy that Walker's trial ended in a mistrial" and were "dissatisfied" with the manner in which Walker's federal case had been resolved. He alleged that Bales "expressed these lingering sentiments" during a press conference regarding the indictment of two BISD administrators in January 2014. Specifically, Walker, relying on a newspaper article discussing the press conference, alleged that Bales made the following statements in reference to Walker's earlier federal prosecution:

> "One of the things we have experienced here was quite surprising to me.... I lived in Beaumont for six years in the late '80s and early 90s; I love Beaumont; two of my children were born here. But I was not prepared for the polarization. The last time we made a charge of something I thought was fraudulent at BISD—and I still do—was the sensitivities in this community that are racially charged. I'm not used to being accused of being on anybody's side. The only side we're on is law and order—and justice."

Walker further alleged that at the time his federal case concluded in December 2012, attorney Cory Crenshaw was employed as an Assistant United States Attorney in the USAO under Bales. According to Walker, Crenshaw held that position until January 2014, at which time Crenshaw was appointed to serve as the Jefferson County District Attorney. Walker alleged that on March 5, 2014, less than two months after Crenshaw's appointment, Crenshaw and his former boss, Bales, an-

nounced the formation of a joint task force "to investigate and prosecute major crimes[,]" including "crimes related to the abuse of public trust." In addition, Walker alleged that on May 12, 2014, Crenshaw was appointed to serve as a Special Assistant United States Attorney for the Eastern District of Texas to "assist with Joint Task Force Cases." Walker specifically pointed out that the letter authorizing Crenshaw's appointment as a Special Assistant United States Attorney, which Walker attached as an exhibit to his habeas petitions, stated that as a condition of the appointment, Crenshaw was required to "report to and act under" the direction of Bales or "any Assistant United States Attorney that [Bales] may designate with regard to any matter handled." Walker claimed that less than three months after this series of events, the Jefferson County District Attorney's office, under the direction of Crenshaw, secured the six pending state indictments against Walker and that the conduct alleged in the state indictments is "precisely the same conduct" that was covered by his federal plea agreement.

Based on these alleged facts, Walker claimed in his habeas petitions that his six state prosecutions violate state and federal guarantees against double jeopardy and his right to due process. Walker acknowledged in his habeas petitions that the State of Texas and the United States are separate sovereigns and are generally permitted to conduct separate prosecutions of a defendant based on the same conduct. He claimed, however, that this general rule of dual sovereignty is subject to an exception, commonly referred to as the "*Bartkus* exception," which prevents successive prosecutions by separate sovereigns when one prosecuting sovereign acts as a tool for the other, or when a prosecution by one sovereign amounts to a "sham" for a second prosecution by another sover-

eign. *See Bartkus v. Illinois,* 359 U.S. 121, 123–24, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Relying on this purported exception, Walker alleged that the Jefferson County District Attorney's office, in bringing its six state prosecutions against Walker, was being used as a mere tool of federal authorities who were dissatisfied with the outcome of Walker's federal trial and that the State's cases are nothing more than a "sham and cover" for what is essentially a second federal prosecution for the same acts. Accordingly, Walker claimed that the State of Texas and the United States should be treated as a "single sovereign" for purposes of his six state prosecutions. Further, Walker alleged that because the state and federal governments have effectively operated as "a single sovereign" under *Bartkus,* the State is bound by the terms of the federal plea agreement, and the State's prosecution of the pending state charges unconstitutionally breaches that agreement.

The trial court set the habeas petitions for a hearing, which, according to Walker, was scheduled to be held on November 24, 2014. Walker subpoenaed Crenshaw and Bales to appear at the hearing to give evidence relevant to Walker's claims for habeas relief. Walker also served a subpoena duces tecum on the Jefferson County District Attorney's office, seeking:

> ... all communications concerning Calvin Walker or the Beaumont Independent School District from May 4, 2011 to the present, between any representative of the Jefferson County District Attorney's Office and any representative of the following agencies: the Department of Justice; the United States Attorney's Office for the Eastern District of Texas; the Federal Bureau of Investigation;

the Internal Revenue Service; and any state agency.

The State filed written objections, a motion to quash, and a motion for protective order in response to the subpoena duces tecum.[2]

According to Walker, the trial court, sua sponte, cancelled the hearing on Walker's habeas petitions on November 21, 2014. On December 18, 2014, the trial court issued an order denying Walker's habeas petitions on their merits. The trial court's order specifically acknowledged that a hearing on Walker's petitions was initially scheduled, but stated that the trial court had examined the parties' pleadings and attached evidentiary exhibits, conducted additional legal research, and concluded that it could "render a proper ruling without further factual development of applicant's claim." Further, the trial court's order stated, in relevant part:

> Assuming without deciding that the *Bartkus*-exception presents a cognizable claim for pretrial habeas corpus relief when sufficiently supported by the necessary facts and circumstances discussed therein, the Court finds the attached evidentiary exhibits do not contain the highly particularized, and somewhat unique, facts and circumstances, as suggested in *Bartkus,* to establish, by a preponderance of the evidence, applicant's entitlement to the habeas corpus relief he requests.
>
> . . . . .
>
> Having examined the evidentiary exhibits submitted by both parties and currently controlling legal authorities pertinent to the issue presented, the Court finds no direct, affirmative evidence demonstrating that the six pending state felony indictments at issue resulted from (a) one independent sov-

---

**2.** The record on appeal does not contain any rulings by the trial court on the objections, motion to quash, or motion for protective order filed by the State.

ereign [*i.e.,* the federal prosecutor in Beaumont] manipulating another independent sovereign [*i.e.,* the Jefferson County District Attorney] into prosecuting applicant in state court, (b) the state and the federal prosecutor being the same person, or (c) applicant's initial federal prosecution being used as "a cover or tool" for applicant's subsequent state prosecution in Jefferson County. . . .

Based on the foregoing findings, the Court concludes that the "dual sovereignty" doctrine has not been forfeited by the state in the six pending indictments at issue. Therefore, applicant's double-jeopardy claim for relief submitted in applicant's six pretrial habeas applications is without merit and is, in all things, **DENIED.**

On January 14, 2015, Walker filed a motion for reconsideration, claiming that the trial court's failure to hold an evidentiary hearing before it ruled on the merits of his claims for habeas relief and its failure to notify the parties of its intent to rule without a hearing deprived him of an opportunity to be heard and develop evidence and violated his rights to due process and compulsory process. The record contains no ruling by the trial court on Walker's motion for reconsideration. Walker timely filed a notice of appeal in each case.

## II. Issue on Appeal

■ In his sole issue on appeal, Walker argues that the trial court erred in denying his request for pretrial habeas corpus relief without first holding an evidentiary hearing and without notifying the parties of the trial court's intent to rule without a hearing. He contends that he presented "a colorable claim that the state prosecutions were barred by double jeopardy" under the state and federal constitutions based on an exception to the well-established "dual sovereignty" doctrine. He argues that the trial court, by ruling on the merits of his habeas petitions without a hearing and without notice that a hearing would not be held, deprived him of an opportunity to develop the evidence necessary to support his allegations and violated his rights to due process and compulsory process. The State's brief argues that the Texas Code of Criminal Procedure does not require a hearing on pretrial habeas petitions and that double jeopardy does not bar Walker's prosecutions by the State.

## III. Discussion

■ "The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty." Tex. Code Crim. Proc. Ann. art. 11.01 (West 2015). The United States Supreme Court has recognized that "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson,* 394 U.S. 286, 290–91, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Therefore, the writ must be "administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Id.* at 291, 89 S.Ct. 1082.

No person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V. In *Abney v. United States,* the United States Supreme Court observed that the preferred procedural vehicle for review of a double jeopardy claim was a pretrial writ of habeas corpus because:

the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction

and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment.... However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense.

431 U.S. 651, 660–61, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The Texas Court of Criminal Appeals has established that "the pretrial writ of habeas corpus is an appropriate remedy to review a double jeopardy claim." *Stephens v. State*, 806 S.W.2d 812, 814 (Tex.Crim.App.1990); *Ex Parte Robinson*, 641 S.W.2d 552, 553–55 (Tex.Crim. App.1982).

 Before a trial court addresses the issue of whether to grant or deny the ultimate relief requested in a petition for writ of habeas corpus, it must first determine whether to grant (i.e., issue) the writ itself. *See* Tex. Code Crim. Proc. Ann. arts. 11.15, 11.40, 11.44 (West 2015); *LeBlanc v. State*, 826 S.W.2d 640, 643 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). "A writ of habeas corpus is an order from a judge commanding a party, who is alleged to be restraining the applicant in some way, to appear before the court with the object of alleged restraint and explain the reasons for the restraint." *Ex parte Hargett*, 819 S.W.2d 866, 868 (Tex.Crim.App.1991); *see also* Tex. Code Crim. Proc. Ann. art. 11.01. The writ essentially initiates "the process by which all persons involved are noticed that the court is considering the issue, parties are physically attached, if necessary[,] and the response (or the return) is made." *LeBlanc*, 826 S.W.2d at 643; *see also* Tex. Code Crim. Proc. Ann. arts. 11.27, 11.29, 11.31 (West 2015). Once the writ issues, the court then considers the return, all attached documents, any testimony, and either grants or denies the relief requested in the petition. *See* Tex. Code Crim. Proc. Ann. arts. 11.40, 11.44 (West 2015); *Hargett*, 819 S.W.2d at 868; *LeBlanc*, 826 S.W.2d at 643.

 In deciding whether to issue the writ, the trial court must "determine whether there is sufficient cause for the writ to be issued or whether the merits of the claim should be addressed." *Hargett*, 819 S.W.2d at 868. A trial court is not required to issue a writ of habeas corpus if it is "manifest from the petition itself, or some documents annexed to it, that the party is entitled to no relief whatever." Tex. Code Crim. Proc. Ann. art. 11.15; *see also Ex parte Jagneaux*, 315 S.W.3d 155, 156 (Tex.App.—Beaumont 2010, no pet.). If the trial court can determine from the face of the petition or the documents attached thereto that the applicant's claim for habeas relief is "utterly without merit[,]" the trial court is "justified in refusing to *grant* (issue) the writ without hearing it." *Lofton v. State*, 777 S.W.2d 96, 97 (Tex.Crim.App.1989).

In this case, the record contains no order or other documentation showing that the trial court formally issued the writs of habeas corpus requested in Walker's habeas petitions. Instead, it appears from the record that the trial court originally set the petitions for a hearing. The trial court later cancelled that hearing based on its determination that it could "render a proper ruling without further factual development of applicant's claim." It then issued its December 18, 2014 order, in which the trial court addressed the merits of the allegations set forth in Walker's habeas petitions and, finding them to be without merit, denied habeas relief. Although the trial court's order indicates that it enter-

tained the merits of Walker's habeas claims and ultimately denied the relief requested, we conclude, for the reasons set forth below, that "it [is] manifest" from Walker's petitions, together with the documents attached to those petitions, that he "is entitled to no relief whatever." *See* Tex. Code Crim. Proc. Ann. art. 11.15. Therefore, the trial court, upon examining the petitions, would have been fully justified under article 11.15 in refusing to issue the writs of habeas corpus and, thus, never reaching the need to conduct a formal evidentiary hearing on the merits of Walker's claims. *See id.; Lofton,* 777 S.W.2d at 97.

## A. The Dual Sovereignty Doctrine

It is well-established that an individual may be prosecuted separately by two different sovereigns for the commission of the same act. *See Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *United States v. Wheeler,* 435 U.S. 313, 316–17, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Bartkus,* 359 U.S. at 136–37, 79 S.Ct. 676. This concept, known as the "dual sovereignty" doctrine, is based on the notion that when a defendant, in a single act, breaks the laws of two separate sovereigns, he has committed two distinct offenses and may be prosecuted and punished separately by each sovereign. *Heath,* 474 U.S. at 88, 106 S.Ct. 433; *Abbate v. United States,* 359 U.S. 187, 194, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (quoting *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922)). Under the dual sovereignty doctrine, separate prosecutions by and under the laws of the separate sovereigns do not violate federal due process or constitutional prohibitions against double jeopardy. *See Wheeler,* 435 U.S. at 317, 98 S.Ct. 1079; *Bartkus,* 359 U.S. at 139, 79 S.Ct. 676.

In determining whether the dual sovereignty doctrine applies in a particular case, "the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns." *Heath,* 474 U.S. at 88, 106 S.Ct. 433. This determination depends on "whether the two entities draw their authority to punish the offender from distinct sources of power." *Id.* The Supreme Court "has uniformly held that the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' not from the Federal Government." *Id.* at 89, 106 S.Ct. 433. Therefore, "a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one." *Wheeler,* 435 U.S. at 317, 98 S.Ct. 1079.

The Texas Court of Criminal Appeals has applied the dual sovereignty doctrine to preclude double jeopardy claims based on successive prosecutions brought by state and federal authorities for the same act. *See Reynolds v. State,* 548 S.W.2d 733, 735 (Tex.Crim.App.1977); *Breedlove v. State,* 470 S.W.2d 880, 882 (Tex.Crim. App.1971). In *Breedlove,* the Court applied the dual sovereignty doctrine to overrule the defendants' claims that their prior convictions for robbery in federal court served as a double jeopardy bar to subsequent state prosecutions based on the same conduct. 470 S.W.2d at 881–82. The Court explained that " '[i]t is true that but one act of robbery was involved.... But by committing that robbery[,] appellant violated the statutes of two separate sovereigns and thus committed two separate offenses.' " *Id.* at 882 (quoting *Hill v. Beto,* 390 F.2d 640, 641 (5th Cir.1968)). Similarly, in *Reynolds,* the Court applied the dual sovereignty doctrine in rejecting

the defendant's claim that his prior convictions for drug offenses in federal court barred subsequent state prosecutions for the same conduct on double jeopardy grounds. 548 S.W.2d at 735. The Court concluded that "[b]y committing these deliveries of methamphetamine, this appellant violated both state and federal law, and ... the State may prosecute and punish him for the same conduct which has been the cause of a similar, previous prosecution in federal court." *Id.* Based on these decisions, various intermediate appellate courts in Texas have noted that "the decisions of our highest court of criminal jurisdiction ... have firmly affixed in Texas jurisprudence the rule that prosecutions for the same transaction that violate both state and federal statutes may be prosecuted by both judicial systems." *Ex parte Bui*, 983 S.W.2d 73, 76 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd); *Ex parte Gary*, 895 S.W.2d 465, 468 (Tex. App.—Amarillo 1995, pet. ref'd).

## B. The *"Bartkus* Exception"

▉ In his petitions for habeas relief, Walker acknowledges that the State of Texas and the United States are separate sovereigns and are generally permitted under the dual sovereignty doctrine to conduct separate prosecutions of a defendant based on the same conduct. He claims, however, that the state and federal governments have effectively operated as a "single sovereign" and that his state prosecutions are merely a "sham" and are being used as a "cover" or "tool" by federal authorities to conduct what is essentially a second federal prosecution of Walker. In support of this contention, Walker relies on the following alleged facts: (1) United States Attorney Bales and other individuals within his office and federal law enforcement were "dissatisfied" with the manner in which Walker's federal case was resolved; (2) attorney Cory Crenshaw,

who had worked as an Assistant United States Attorney under Bales when Walker's federal case was resolved, was appointed in January 2014 to serve as the Jefferson County District Attorney; (3) in March 2014, Crenshaw and Bales announced the formation of a joint task force to prosecute "crimes related to the abuse of public trust[;]" (4) in May 2014, Crenshaw was appointed to serve as a Special Assistant United States Attorney for the Eastern District of Texas to "assist with Joint Task Force Cases[;]" (5) Crenshaw was required to "report to and act under" the direction of Bales as a condition of his appointment as a Special Assistant United States Attorney; (6) in July 2014, the Jefferson County District Attorney's office, under the direction of Crenshaw, filed the pending state charges, which "are based on precisely the same conduct" as Walker's earlier federal prosecution; and (7) Walker's state cases are "joint task force" cases that Crenshaw—by virtue of his authority as a state district attorney and cross-designation as a Special Assistant United States Attorney—had the power to prosecute as both a federal and a state prosecutor.

Based on these alleged facts, Walker claims in his habeas petitions that his state prosecutions fall within the so-called "*Bartkus* exception" to the dual sovereignty doctrine. In *Bartkus*, the petitioner was tried and acquitted in federal court for robbing a federal savings and loan association. 359 U.S. at 121–22, 79 S.Ct. 676. Thereafter, he was convicted in Illinois state court for violations of state law based on the same robbery. *Id.* at 122, 79 S.Ct. 676. The United States Supreme Court, relying on principles underlying the dual sovereignty doctrine, held that the Due Process Clause of the Fourteenth Amendment did not preclude a prosecution of the petitioner by the State of Illinois even

though the petitioner had previously been prosecuted in federal court for the same act. *Id.* at 131–39, 79 S.Ct. 676. In dicta, the Court examined and rejected the petitioner's argument that federal authorities had used the subsequent state prosecution as a mere "tool" to conduct what was essentially a second federal prosecution for the same acts, thereby avoiding the Fifth Amendment's prohibition against double jeopardy. *Id.* at 122–24, 79 S.Ct. 676. In considering this argument, the Court acknowledged that the record showed: (1) that the FBI agent who conducted the investigation on behalf of the federal government provided all of the evidence he had gathered against the petitioner to state prosecutors and that some of that evidence was gathered after the petitioner's federal acquittal; (2) that the federal sentencing of the accomplices who testified against the petitioner in both trials was purposely continued by the federal court until after the accomplices testified in the state trial; and (3) that federal officials acted in cooperation with state authorities during the subsequent state prosecution.[3] *Id.* at 122–23, 79 S.Ct. 676. The Court concluded, however, that these facts "[did] not support the claim that the State of Illinois[,] in bringing its prosecution[,] was merely a tool of the federal authorities," or that the state prosecution was "a sham and a cover" for what was essentially a second federal prosecution for the same acts. *Id.* at 123–24, 79 S.Ct. 676.

▆▆ Because the *Bartkus* Court determined that the record before it did not support a finding that the prosecution at

issue was a "sham," the Court " 'did not squarely address the issue of whether, if substantiated by the record, a "sham" situation would constitute an exception to the dual sovereignty doctrine.' " *United States v. Harrison*, 918 F.2d 469, 475 (5th Cir.1990) (quoting *United States v. Patterson*, 809 F.2d 244, 247 n. 2 (5th Cir.1987)). Nevertheless, a number of federal courts have relied on the dicta in *Bartkus* to infer that a potential exception to the dual sovereignty doctrine may exist where one prosecuting sovereign is effectively controlled by or used as a tool of the other, or where the subsequent prosecution is merely a sham to mask a second prosecution by the sovereign that pursued the first. *See, e.g., United States v. Piekarsky*, 687 F.3d 134, 149 (3d Cir.2012); *United States v. Vinson*, 414 F.3d 924, 929 (8th Cir.2005); *United States v. Tirrell*, 120 F.3d 670, 677 (7th Cir.1997); *United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir.1991); *In re Kunstler*, 914 F.2d 505, 517 (4th Cir.1990).

However, as many federal courts have recognized, the *Bartkus* exception, to the extent it exists, is an exceedingly narrow exception that applies, if at all, "only in the rarest of circumstances." *United States v. Angleton*, 314 F.3d 767, 774 (5th Cir.2002). In fact, since *Bartkus* was decided in 1959, there appears to be only one reported federal case that has ever applied the exception to bar successive prosecutions by separate sovereigns, *see United States v. Belcher*, 762 F.Supp. 666, 670–71 (W.D.Va. 1991), which has led some courts to question whether the exception is simply narrow or whether it exists at all. *See, e.g.,*

---

3. In his dissenting opinion in *Bartkus,* Justice Brennan detailed the extensive cooperation between the state and federal authorities that existed in that case. 359 U.S. at 165, 79 S.Ct. 676 (Brennan, J., dissenting). Specifically, he noted that "federal officers [had] solicited the state indictment, arranged to assure the attendance of key witnesses, unearthed addi-

tional evidence to discredit Bartkus and one of his alibi witnesses, and in general prepared and guided the state prosecution." *Id.* He further noted that the State of Illinois conceded at oral argument that federal officers instigated and guided the state prosecution against Bartkus and "actually prepared [the] case." *Id.*

*United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir.2008) (" 'Since *Bartkus* was decided in 1959, this Circuit has never ruled that a prosecution violated double jeopardy protections under [*Bartkus'*] "sham prosecution" theory.' . . . As this track record suggests, there is some room for debate over whether the *Bartkus* exception is just narrow or whether it is indeed real."); *Angleton*, 314 F.3d at 773–74 ("The *Bartkus* Court's failure to identify a particular instance of a sham prosecution may mean that the exception does not exist."); *United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir.1993) ("We have questioned whether *Bartkus* truly meant to create [a 'sham prosecution'] exception, and we have uniformly rejected such claims.").

Because the terms "sham" and "tool" denote a "special relationship" involving "a strong element of manipulation[,]" *United States v. Rashed*, 234 F.3d 1280, 1283 (D.C.Cir.2000), numerous federal courts have suggested that the *Bartkus* exception, to the extent it exists, is limited to the extraordinary situation in which one sovereign is " 'so dominated, controlled, or manipulated by the actions of the other that it [does] not act of its own volition.' " *Angleton*, 314 F.3d at 774 n. 15 (quoting *United States v. Baptista–Rodriguez*, 17 F.3d 1354, 1361 (11th Cir.1994)); *see also United States v. Trammell*, 133 F.3d 1343, 1350 (10th Cir.1998); *United States v. Guzman*, 85 F.3d 823, 827 (1st Cir.1996). This standard is not satisfied by mere cooperation between federal and state authorities, even when that cooperation is significant. *See Bartkus*, 359 U.S. at 123–24, 165, 79 S.Ct. 676 (concluding that state prosecution was not a sham, even though the record showed, as Justice Brennan noted in his dissent, that "federal officers [had] solicited the state indictment, arranged to assure the attendance of key witnesses, unearthed additional evidence to discredit Bartkus and one of his alibi witnesses, and in general prepared and guided the state prosecution"); *United States v. Zone*, 403 F.3d 1101, 1103, 1105 (9th Cir.2005) (per curiam) (concluding that formation of joint task force consisting of state and federal prosecutors and law enforcement officials who investigated defendant's activities was insufficient to show that defendant's state prosecution was a sham under *Bartkus* ); *Angleton*, 314 F.3d at 770, 774 (rejecting claim that federal prosecution was a sham under *Bartkus*, even though state prosecutors asked federal authorities to investigate defendant for murder, a joint task force of federal and state law enforcement officials was then formed to investigate the murder, the task force received all evidence gathered during defendant's earlier state prosecution for the same murder, three state investigators on the task force were deputized as United States Marshals, and the two assistant district attorneys who prosecuted defendant in state court assisted the task force); *United States v. Friedberg*, 766 F.Supp. 87, 89 (E.D.N.Y.1991) (rejecting claim that defendants' federal prosecution was a sham, even though defendants' activities were investigated by a joint task force consisting of federal and state prosecutors and law enforcement officials). Likewise, the cross-designation of a state prosecutor as a Special Assistant United States Attorney to assist or even conduct a federal prosecution, without more, is not indicative of a sham prosecution. *See United States v. All Assets of G.P.S. Auto. Corp.*, 66 F.3d 483, 495 (2d Cir.1995) ("[E]very circuit to consider the issue has also held that the cross-designation of a state district attorney as a federal official to assist or even to conduct a federal prosecution does not by itself bring a case within the *Bartkus* exception[.]"); *United States v. Figueroa–Soto,*

938 F.2d 1015, 1019 (9th Cir.1991) ("The designation of [the state attorney as a Special Assistant United States Attorney] did not convert him into a federal official for all purposes. He could wear two hats. His primary role in the state prosecution as the state prosecutor was not affected by a federal status that became significant only when he took on the federal prosecution of [the defendant]."); *United States v. Paiz*, 905 F.2d 1014, 1024 (7th Cir.1990) (concluding that designation of state prosecutor as a Special Deputy United States Attorney for purposes of the defendant's federal prosecution did not invoke *Bartkus* exception).

Relatively few Texas cases have addressed the so-called *Bartkus* exception. In at least two separate opinions, the First District Court of Appeals rejected claims for application of the exception, concluding that "Texas law has not recognized the so-called *Bartkus* exception to the dual sovereignty rule." *Bui*, 983 S.W.2d at 76; *see also Kappmeyer v. State*, 127 S.W.3d 178, 183 (Tex.App.—Houston [1st Dist.] 2003, no pet.) (concluding that the record showed nothing more than cooperation between federal and state authorities and, thus, there was "no basis for deviating from [the court's earlier] holding in [*Bui*] ... that Texas law has not recognized the so-called '*Bartkus* exception' to the dual sovereignty doctrine."). Other intermediate Texas courts of appeals, by contrast, appear to recognize, at least in theory, a "sham prosecution" exception to the dual sovereignty doctrine. *See Ex parte Candelas*, 91 S.W.3d 810, 813 (Tex.App.—El Paso 2002, no pet.); *Gary*, 895 S.W.2d at 468. These courts, however, have uniformly refused to apply the exception to bar successive prosecutions by separate sovereigns. *See Candelas*, 91 S.W.3d at 813 (concluding that *Bartkus* exception did not apply to bar the petitioner's state prosecution where the petitioner failed to show

that federal authorities had manipulated the State into prosecuting the petitioner in state court); *Gary*, 895 S.W.2d at 466, 468 (concluding that *Bartkus* exception did not apply to bar the state prosecution of the petitioner following his federal conviction for the same acts where the record showed that the state indictment was obtained before the federal indictment and the only assertion of alleged collusion was the State's acknowledgement that it had obtained a copy of a statement of facts covering the testimony elicited in the federal trial in preparation for its prosecution of the petitioner in state court).

Walker cites to only one case, *United States v. Belcher*, in which the *Bartkus* exception has been applied to preclude successive prosecutions by separate sovereigns. 762 F.Supp. 666 (W.D.Va.1991). In *Belcher*, a Virginia state prosecutor unsuccessfully prosecuted the defendant in state court for manufacturing marijuana and using a firearm in the commission of a felony. *Id.* at 668. Thereafter, the same state prosecutor, who was also designated as a Special Assistant United States Attorney for the Western District of Virginia, used his designation as a federal prosecutor to obtain a federal indictment against the defendant based on the same conduct that had formed the basis of the state prosecution. *Id.* at 668–69. Relying on *Bartkus*, the district court dismissed the federal indictment, concluding that the defendant's federal prosecution was " 'a sham and a cover' for the first, unsuccessful prosecution" of the defendant in state court. *Id.* at 671. Central to the court's holding was the fact that the state and federal charges were pursued by the same prosecutor, who acted both as an attorney for the State of Virginia and as a Special Assistant United States Attorney for the Western District of Virginia. *Id.* at 670–71. The court explained that "[t]he fact

that the two sovereigns have essentially pooled their powers in one prosecutor strongly suggests to the court that in reality there are no longer two sovereigns[.]" *Id.* at 671. "Instead," the court explained, "the pooling of prosecutorial power effectively creates one 'super sovereign,' i.e., a unitary government[,]" and "[t]hus, a central government is actually at work here, not a federal government." *Id.* Characterizing the circumstances as a "breakdown in federalism[,]" the court applied the *Bartkus* exception to preclude the subsequent federal prosecution of the defendant. *Id.*

■ Although Walker relies heavily on *Belcher* in support of his claims for habeas relief, we find *Belcher* to be readily distinguishable from the facts alleged in Walker's habeas petitions. Unlike the prosecutor in *Belcher*, who personally prosecuted the defendant in both state and federal court, Walker does not allege that Crenshaw was involved in any way in Walker's federal prosecution. He also does not allege that any federal prosecutor who was involved in the prosecution of Walker's federal case has in fact participated in Walker's state prosecutions.[4] Further, in contrast to the prosecutor in *Belcher*, who used his cross-designation as a Special Assistant United States Attorney to obtain a federal indictment against the defendant after he unsuccessfully prosecuted the defendant in state court, Walker does not allege any facts showing that Crenshaw has used or attempted to use his authority

as a Special Assistant United States Attorney to prosecute Walker in federal court. Instead, Walker relies on Crenshaw's appointment as a Special Assistant United States Attorney to allege that, at the time his state cases were filed, Crenshaw effectively held "the unified authority of a state and federal prosecutor" for joint task force cases (which, he claims, included Walker's cases) and that this "pooling" of federal and state authority into a single individual or office shows that the State and the federal government are operating as a "single sovereign" with respect to the prosecution of Walker's state court cases. In other words, Walker claims that the mere fact that Crenshaw possessed the authority to act as a Special Assistant United States Attorney, even though he did not actually exercise that authority in relation to Walker, is sufficient to show that Walker's state prosecutions are a sham under *Bartkus*. We disagree. As noted above, the mere fact that a state prosecutor is cross-designated as a Special Assistant United States Attorney, without more, is insufficient to establish that the State and the federal government are so intertwined that they are, in actuality, one sovereign prosecuting the defendant twice. *See G.P.S. Auto. Corp.*, 66 F.3d at 495; *Paiz*, 905 F.2d at 1024.

Although we question whether the *Bartkus* exception is even recognized in Texas, we need not decide that question today

---

4. In his habeas petitions, Walker alleges that Crenshaw, in his capacity as an appointed Special Assistant United States Attorney, was required "to report to and act under" the direction of United States Attorney Bales. However, this allegation, even if true, does not indicate that federal authorities participated in or had any element of control over Walker's state prosecutions. As noted below, Walker does not allege that Crenshaw ever exercised his authority as a Special Assistant United States Attorney to prosecute Walker.

Rather, Walker's state prosecutions were clearly brought by Crenshaw in his capacity as a state district attorney. Walker does not allege that Crenshaw had any obligation in his capacity as a state district attorney to report to or act under the direction of Bales or any other federal official. Walker, therefore, has not alleged any facts showing that Crenshaw's obligation "to report to and act under" the direction of Bales applied to Walker's state prosecutions.

**14**

because we conclude that the allegations in Walker's habeas petitions, together with the exhibits attached to those petitions, show, at most, permissible federal-state cooperation in connection with Walker's state prosecutions. Walker alleges no facts showing that state authorities have been " 'so dominated, controlled, or manipulated' " by federal officials that they are no longer acting of their own volition in conducting Walker's state prosecutions. *See Angleton,* 314 F.3d at 774 n.15. Accordingly, because we conclude that no exception to the dual sovereignty doctrine applies to this case in such a way as to call the state indictments into question, Walker has failed to allege facts showing that he is entitled to the habeas relief requested in his petitions.[5]

We must affirm a trial court's ruling if it is correct under any theory of law applicable to the case, even if the trial court did not purport to rely on that theory. *State v. Esparza,* 413 S.W.3d 81, 85 (Tex.Crim.App.2013); *Ex parte Evans,* 410 S.W.3d 481, 484 (Tex.App.—Fort Worth 2013, pet. ref'd). Because we conclude that the facts alleged in Walker's habeas petitions, even if proven true, do not show that the State's prosecution of Walker is a "sham and cover" for a second federal prosecution, we conclude that "it [is] mani-

fest" from the face of Walker's habeas petitions and the documents attached thereto that Walker "is entitled to no relief whatever." Tex. Code Crim. Proc. Ann. art. 11.15. Therefore, the trial court, upon examining Walker's petitions for writs of habeas corpus, would have been fully justified under article 11.15 in finding that Walker was not entitled to the requested habeas relief and in refusing to grant (i.e., issue) the writs of habeas corpus. *See id.; Lofton,* 777 S.W.2d at 97 (affirming trial court's order denying pretrial habeas relief based on double jeopardy grounds because the petition, on its face, demonstrated that the applicant's habeas claim was "utterly without merit" and, thus, the trial court would have been fully justified in refusing to grant the writ under article 11.15 without hearing it). We therefore hold that the trial court did not abuse its discretion by refusing to hold a formal evidentiary hearing or in failing to inform Walker that it did not intend to hold such a hearing before concluding that he was not entitled to habeas relief.[6] We overrule Walker's sole issue in each of his six cases and affirm the orders of the trial court.

AFFIRMED.

5. Because we conclude that Walker has failed to allege facts that, if true, would show that he is being prosecuted by the same sovereign, we express no opinion as to whether Walker has otherwise alleged a valid double jeopardy or due process claim in his habeas corpus petitions.

6. In his brief, Walker also claims generally that the trial court's failure to hold an evidentiary hearing and its failure to notify the parties that it did not intend to hold a hearing violated his right to due process and his right to compulsory process. Walker does not cite to any legal authorities to support these arguments. He has also failed to include any argument in his brief under the traditional

procedural due process analysis, *see Ex parte Montgomery,* 894 S.W.2d 324, 327 (Tex.Crim. App.1995) (per curiam), and has failed to identify the applicable standards for a compulsory process violation or how they apply to the facts in this case. *See Coleman v. State,* 966 S.W.2d 525, 527–28 (Tex.Crim.App. 1998). We conclude that Walker has failed to adequately brief his due process and compulsory process arguments. *See* Tex. R. App. P. 38.1(i); *see also State v. Gonzalez,* 855 S.W.2d 692, 697 (Tex.Crim.App.1993) ("When a party raises a point of error without citation of authorities or argument, nothing is presented for appellate review.").